**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**RACHEL C. SUMNER,**

      **Plaintiff,**          **CIVIL ACTION NO. 13-cv-14303**

   **vs.**

                      **DISTRICT JUDGE SEAN F. COX**

**COMMISSIONER OF**         **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Rachel Sumner seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to Social Security benefits for her physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 10) and Defendant's Motion for Summary Judgment (docket no. 12).   The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 4.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

**I.**     **RECOMMENDATION:**

The Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 10) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 12) be GRANTED.

**II.**    **PROCEDURAL HISTORY:**

Plaintiff filed an application for Supplemental Security Income benefits with a protective filing date of October 5, 2010, alleging that she had been disabled since January 1, 2010, due to diabetes-related ailments, including diabetic retinopathy, peripheral neuropathy of the lower extremities, and depression. (*See* docket no. 10 at 10.) The Social Security Administration denied benefits. (*See* TR 12.) Plaintiff requested a *de novo* hearing, which was held on October 14, 2011, before Administrative Law Judge (ALJ) James N. Gramenos, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 12-24.) The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced this action for judicial review. The parties then filed their instant Motions.

## III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A. Plaintiff's Testimony

Plaintiff sets forth a detailed account of her hearing testimony, which the Court will adopt as follows:

> Plaintiff was born on December 7, 1969, and [was] 44 years of age [at the time of the hearing.] (TR 15.) She last worked in April, 2010 as a part-time clerk at Dollar Tree[;] she did not have substantial previous employment as she stayed home to care for her young son. (TR 32.) She testified that she had to stop work completely due to increased problems with her vision, specifically she suffers from "floaters" that range from "dots, lightning bolts, clouds, to glares" and has trouble concentrating or focusing due to regular dizzy spells. (TR 33.)
>
> Plaintiff testified she has numbness in her feet and hands, floaters in her eyes and dizzy spells accompanies (sic) by intense nausea, she has trouble with even a 4-5 hours shift and often needs to sit down, close her eyes and rest for 15-30 minutes at a time. (TR 33-35.) The Plaintiff testified that often "my feet, sometimes they'll be totally on fire, it keeps me awake at night when I'm sleeping. Or they could be cold as ice." (TR 35.) She further testified that her hands are often numb and have pins and needles, making it difficult to write or type on a computer. Plaintiff often drops things and has difficulty lifting. (TR 36.) Plaintiff testified to taking frequent breaks

> to perform even basic chores. (TR 37.) Plaintiff has not worked since 2010, cannot
> bear to work a 4-5 hours shift and has dizzy spells in which the room spins and she
> has nausea once per day, without warning lasting 30-60 minutes. (TR 35.) To
> relieve her dizziness, Plaintiff must sit down immediately and rest until it passes.

(Docket no. 10 at 11-12.) Plaintiff further testified that the "floaters" and the dizziness were due to

her diabetes, for which she took sixty units of insulin once a day. (TR 33.) She added that her

diabetes also resulted in depression, which was exacerbated by her mother "constantly [being] on

[her] back to find a job." (TR 44, 53.) Defendant's account of Plaintiff's testimony discusses

Plaintiff's acknowledgment that she did not wear glasses and that she had not seen a therapist, social

worker, or psychiatrist for her depression. (Docket no. 12 at 7.) Defendant further notes that

Plaintiff walked to her doctor appointments, climbed steps while doing laundry, did chores around

her house, read and played solitaire for leisure, and managed her own personal care. (*Id.* at 8.)

### B.    Medical Record

Plaintiff (docket no. 10 at 13), Defendant (docket no. 12 at 8-12), and the ALJ (TR 18-20)

each set out a factual background related to Plaintiff's medical record. Although focused on

different portions of the record, the Court finds that there are no inconsistencies between the three

accounts; thus the Court will incorporate them by reference herein. The undersigned has, however,

conducted an independent review of Plaintiff's medical record and will include comments and

citations as necessary throughout this Report and Recommendation.

### C.    The Vocational Expert

The ALJ asked the VE to assume the following with regard to a hypothetical individual:

> . . . [t]he hypothetical person would be able to occasionally lift and/or carry weights
> defined as up to one-third of the normal eight-hour work period at least up to five
> pounds of weight and would be able to frequently lift and/or carry weights defined
> as up to two-thirds of the work period up to at least five pounds of weight, with a
> functional capability to stand and/or walk and to engage in the such (sic) positions
> of standing and/or walking in a workplace for an overall total of up to at least two

3

hours during a normal eight-hour work period. Relative to the sitting position, again, assuming the normal breaks and any jobs that may be identifiable by you, this hypothetical worker would have the functional abilities to engage in the sitting positions for periods of time, at least an overall period of six hours when performing work activity. As to environmental limitations, eliminate from consideration jobs that would have extremes of cold, heat, wetness, or humidity. And the hypothetical worker is limited to unskilled work forms of jobs, occupations. Unskilled work is defined in the regulations as requiring "little or no judgment and can be learned in a short period of time."

(TR 63-64.) The ALJ then asked the VE to "eliminate jobs that would have a noise intensity level above the moderate level of noise intensity, as that term noise is defined" in the DOT. (TR 64.)

The ALJ next asked the VE to "eliminate jobs that require, as a field of vision, a fine visual acuity," to which the VE responded that this "would eliminate jobs requiring near acuity." (TR 65.) The ALJ explained that he was not instructing the VE to eliminate jobs requiring near acuity, as in distance, but instead he was instructing the VE to eliminate jobs requiring fine visual acuity, as in type size. (TR 65-66.) The VE insisted that the ALJ's instruction would eliminate "near acuity vision at 20 inches or less" and that such a requirement would "eliminate all [sedentary jobs]." (TR 66.) The ALJ and the VE continued to discuss the issue, with the VE explaining that "[w]hat I have to work with is near acuity and far, near being less than 20 inches," and far being "about 20 feet." (TR 66-67.) The ALJ told the VE that he found the VE's response "not credible" with regard to visual acuity and instructed the VE to provide additional support for his assertion following the hearing. (TR 68-71.) Ultimately, the ALJ told the VE To "eliminate from the hypothetical question the element of eliminating jobs that require, as a field of vision, fine visual acuity," noting that "I've heard your opinion. I told you I don't believe it." (TR 71.)

The ALJ further asked the VE to "eliminate from consideration jobs that would have hazards in the work setting from unprotected areas of moving machinery, heights, ramps, ladders, and scaffolding." (TR 70.) He added that the individual could "speak and understand the English

4

language; can read a simple message in the English language," and "requires work that's simple unskilled with one, two, or three-step instructions."  (TR 71.)  The ALJ further added that the individual "[h]as the specific basic mental ability to understand, carry out, and remember simple, unskilled work instructions, either through the English language and/or through instructions by demonstration."  (TR 71.)  And he told the VE to assume that the individual "has the mental functional ability to respond appropriately to supervision when performing unskilled work activity; has the functional ability to respond appropriately to usual work situations and with coworkers performing unskilled work activity as well as the mental functional ability in dealing with changes in a routine, unskilled work setting."  (TR 71.)

The VE testified that such an individual could perform work as a reception clerk, an assembler, or a sorter.  (TR 73-74.) Plaintiff's attorney then asked the VE whether his answer would change if the individual "had a visual problem that would require her to close her eyes and be off task" for about 15 minutes each day.  (TR 76.)  The VE testified that such a requirement would be work preclusive.  (TR 76.)

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2010, the date of her alleged onset, and that she had severe Type II diabetes mellitus, nonproliferative diabetic retinopathy, and peripheral neuropathy of the lower extremities.  (TR 15.) The ALJ further found that her impairments did not meet or equal those listed in the Listing of Impairments.  (TR 16-17.) The ALJ found, however, that Plaintiff's allegations regarding the extent of her symptoms were not credible and that Plaintiff had the ability to perform sedentary work but had the following RFC:

(1) an ability to occasionally stand and/or walk, with normal breaks, for at least a

period of 2 hours during a normal 8 hour work period; (2) a functional ability to engage in the sitting position for periods of time upwards of 6 hours when performing work activity; (3) lifting abilities of up to at least 5 pounds occasionally and at least up to 5 pounds frequently; (4) eliminate from consideration jobs that would have extremes of cold, heat, wetness or humidity; (5) hypothetical worker is limited to unskilled work/jobs, with unskilled work being defined In (sic) the regulations requiring "little or no judgment and can be learned in a short period of time;" (6) has the ability to engage in reading with the ability to read typical newspaper print; (7) eliminate jobs that would require seeing or reading a lesser pica visual acuity; (8) eliminate from, (sic) consideration jobs that have hazards in the work setting from unprotected areas of moving machinery; heights; ramps; ladders; and scaffolding; (9) has the specific basic mental ability to understand, carrying (sic) out, and remember simple unskilled work instructions thorough (sic) either the English language and/or through instructions by demonstration; (10) has the basic mental ability to understand, carry out, and remember simple one, two or three step work instruction and to deal with changes in a routine unskilled work setting; and (11) has the mental functional ability to respond appropriately to supervision when performing unskilled work activity and with co-workers.

(TR 17.)  The ALJ then determined, in reliance on the VE's testimony and the medical vocational guidelines, that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 22-23.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act.  (TR 23.)

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938));

6

*Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.    Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed

7

disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

     **C.    Analysis**

     The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be reversed or remanded because (1) there is no support for the ALJ's mental RFC assessment where there was no mental RFC assessment from a physician in the record; (2) the ALJ did not complete a "function-by-function" assessment; (3) the ALJ failed to properly assess Plaintiff's mental RFC;

2:13-cv-14303-SFC-MKM   Doc # 14   Filed 11/03/14   Pg 9 of 14   Pg ID 562

and (4) the ALJ's physical RFC assessment is unsupported and is contradicted by an RFC assessment in the record.  (Docket no. 10 at 15-24.)

### 1.    The ALJ's Mental RFC Determination

Plaintiff first asserts that the record is devoid of any medical report related to Plaintiff's mental RFC with the exception of a consultative examination report from Dr. Hugh Bray, which "only deals with Plaintiff's ability to get along with co-workers, her supervisors and her employer." (*Id.* at 17.)  Plaintiff notes that this report "does not address all the work-related functions outlined in SSR 96-8p and SSR 85-15 in order for the ALJ to obtain a mental RFC."  (*Id.* at 17-18.)  Thus, Plaintiff contends, the ALJ "merely compiled his own mental RFC - which he is not qualified to do." (*Id.* at 18.)  Plaintiff further asserts that the ALJ did not consider the impact of her mental impairments after determining that they were not severe, alleging that the ALJ "never addressed her ability to understand, carry-out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision co-workers and work situations; and deal with changes in a routine work setting."  (*Id.* at 19-21.)

Defendant asserts that the ALJ properly relied on Dr. Bray's opinion in reaching his RFC and that the ALJ considered all of Plaintiff's impairments.  (Docket no. 12 at 20-23.)  The undersigned agrees.  Dr. Bray opined as follows:

1.    The claimant's mental ability to relate to others including fellow workers and supervisors is not impaired. . . .

2.    The claimant's mental ability to understand, remember and carry out tasks appears to be mildly impaired. . . . [She] was able to perform simple repetitive tasks.  It is likely the claimant could handle more complex tasks. Difficulty in performing multiple step tasks is likely to be minimal.

3.    The claimant's mental ability to maintain attention, concentration, persistence, pace and effort is not impaired.

9

    4.      The claimant's mental ability to withstand stress and pressure associated with day to day work activities is mildly impaired.

(TR 379-98.)  The ALJ translated these opinions into the following RFC limitations:

> [Claimant] (9) has the specific basic mental ability to understand, carrying (sic) out, and remember simple unskilled work instructions thorough (sic) either the English language and/or through instructions by demonstration; (10) has the basic mental ability to understand, carry out, and remember simple one, two or three step work instruction and to deal with changes in a routine unskilled work setting; and (11) has the mental functional ability to respond appropriately to supervision when performing unskilled work activity and with co-workers.

(TR 17.)  Thus, the ALJ appeared to rely solely on Dr. Bray's opinion with regard to Plaintiff's work-related limitations.  And he specifically included limitations related to all of the impairments that Plaintiff alleges he did not discuss.  Moreover, while Plaintiff generally alleges that the ALJ did not "address all work-related functions" she does not discuss what work-related functions he failed to consider.

20 C.F.R. § 416.912 provides, in relevant part, as follows:

> (a) General. In general, *you have to prove to us* that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s). . . .
>
> .   .   .
>
> (c) *Your responsibility. You must provide medical evidence* showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. *You must provide evidence*, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim. . . .
>
> .   .   .
>
> (d) Our responsibility. Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. We will make every

10

reasonable effort to help you get medical reports from your own medical sources
when you give us permission to request the reports.

> (1) Every reasonable effort means that we will make an initial request for
> evidence from your medical source and, at any time between 10 and 20
> calendar days after the initial request, if the evidence has not been received,
> we will make one followup request to obtain the medical evidence necessary
> to make a determination. . . .

20 C.F.R. § 416.912 (emphasis added). Thus, as a general matter, it is a claimant's burden to

provide a complete record, but the ALJ must put forth the statutorily required "reasonable effort"

to assist the claimant. *See, e.g., Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("[T]he claimant

must demonstrate that she has a 'severe impairment.'" (citation omitted)); *Landsaw v. Sec'y of*

*Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir.1986) ("The burden of providing a complete

record, defined as evidence complete and detailed enough to enable the [Commissioner] . . . to make

a disability determination, rests with the claimant."); *cf.* 42 U.S.C. § 405(g) (The sixth sentence of

this provision . . . requires a claimant seeking remand based on "new evidence" to show "good

cause" why the evidence was not previously "incorporate[d] . . . into the record.").

Plaintiff provided no additional evidence with regard to her mental impairments and does

not suggest that any such evidence exists. Thus, the ALJ properly relied on Dr. Bray's report in

determining her mental RFC. Plaintiff's Motion should be denied with regard to this issue.

**2.    The ALJ's Alleged Failure to Include a Function-By-Function
Assessment**.

Plaintiff asserts that the ALJ failed to conduct a proper function-by-function analysis of

Plaintiff's physical impairments because he did not separately consider Plaintiff's ability to carry,

push, or pull. (Docket no. 10 at 18-19.) But as Defendant states, "Although a function-by-function

analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in

writing." *Delgado v. Comm'r of Soc Sec.*, F.App'x 542, 547-48 (6th Cir. 2002) (quoting *Bencivengo*

*c. Comm'r of Soc. Sec.*, No. 00-1995, 251 F.3d 153 (Table) (3d Cir. Dec. 19, 2000)).  Here, as discussed, *supra*, the ALJ compiled an extensive list of physical limitations in Plaintiff's RFC.  To the extent that the ALJ did not include any limitations with regard to pushing, pulling, or carrying, the ALJ noted that he did not find Plaintiff wholly credible:

> I find that the near-sedentary existence which claimant described at the hearings is shown by the overall record to be self-imposed, rather than being the result of any totally disabling impairment or combination of impairments.  Claimant has not sought medical treatment on a regular basis, and in fact, the records show that claimant has not even followed the recommendation of treating doctors to exercise, watch her diet and quit smoking.  Neither the objective medical evidence, nor the testimony of claimant, establishes that claimant's ability to functions has been so severely impaired as to preclude all types of work activity.

(TR 20.)  And an ALJ is not required to include in Plaintiff's RFC those limitations that he does not find credible.  *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)  Thus, Plaintiff's Motion should be denied with regard to this issue.

### 3.    The ALJ's Physical RFC Assessment

Plaintiff next asserts that the ALJ's physical RFC for Plaintiff contradicts a March 25, 2009 assessment by Colleen Burton.  (Docket no. 10 at 22.)  As Plaintiff notes, however, Ms. Burton's assessment found that Plaintiff was "capable of performing light work; specifically, lifting 20 pounds occasionally, lifting 10 pounds frequently, standing and/or walking 6 hours." (*Id.*)  Thus, Plaintiff argues, the ALJ's determination that Plaintiff could only perform sedentary work contradicts Ms. Burton's determination.  If anything, though, the ALJ considered Ms. Burton's assessment and, accepting some of Plaintiff's allegations as true, found increased restrictions.

Moreover, while Plaintiff's allegation generally references Ms. Burton's assessment, she appears to primarily assert that the ALJ erred when he did not include in her RFC a restriction requiring her to close her eyes for 15 minutes due to her diabetic retinopathy.  (*Id.* at 22-24.)

Plaintiff asserts that "[t]he ALJ's opinion concerning the Plaintiff's RFC in relationship to her visual floaters is inconsistent with her medical condition . . . and directly contradicts the testimony and evidence presented at the hearing." (*Id.*) The ALJ, however, noted Plaintiff's allegation regarding her need to close her eyes to stop the floaters, but he found that this claim was inconsistent with the medical evidence. (*See* TR 18-19.) He specifically discussed a May 26, 2010 appointment with Dr. Michael Gamble, where Plaintiff stated that she did not want any adjustments to her medication, that she went to see a chronic care team "only to appease her mother" and that she "does not plan on implementing any of their recommendations." (TR 19.) This, and the other evidence discussed by the ALJ, led him to find that while "the inconsistent information provided by claimant may not be the result of a consious intention to mislead, . . . the inconsistencies suggest that the information provided by claimant generally may not be entirely reliable." (TR 20.) Thus, in determining Plaintiff's RFC, the ALJ, as required, included only those limitations that he found credible. Therefore, Plaintiff's Motion should be denied with regard to this issue.

## VI.    CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 10) should be DENIED and Defendant's Motion for Summary Judgment (docket no. 12) should be GRANTED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638

F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: November 3, 2014          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: November 3, 2014          s/ Karri Sandusky
                                 Case Manager

14